## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SIMSBURY-AVON PRESERVATION | : | |
| SOCIETY, LLC, ET AL., | : | |
|     Plaintiffs, | : | |
| | : | Civil No. 3:04cv803(JBA) |
| v. | : | |
| | : | |
| METACON GUN CLUB, INC., | : | |
|     Defendants. | : | |

### RULING ON DEFENDANT'S MOTION TO DISMISS [DOC. # 9]

The Simsbury-Avon Preservation Society and six individual members bring a five-count complaint against the Metacon Gun Club, alleging violations of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq., as amended, and the Clean Water Act ("CWA"), 33 U.S.C. § 1251 et seq.  See Amended Complaint [doc. #12].  Defendant moves to dismiss the complaint on the grounds that the Simsbury-Avon Preservation Society ("Society") was not legally recognized by the Connecticut Secretary of State until after the present lawsuit was filed, and therefore does not have standing to maintain the suit; that plaintiffs' RCRA subchapter III claim fails to state a claim upon which relief may be granted; and that in the absence of the subchapter III claim, which permits immediate filing of a lawsuit upon serving notice to the defendant and the appropriate administrative agencies, the remaining claims must be dismissed for lack of the statutorily-required sixty-day notice period. For the reasons that follow, defendant's motion will be granted

1

as to the RCRA subchapter III claim and denied as to the
remaining claims and the challenge to the Society's standing to
bring suit.

## I.   Factual Background

The complaint alleges the following facts, which are
presumed to be true for purposes of deciding this motion to
dismiss.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984),
Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir.
1991).

The Metacon Gun Club has operated an outdoor shooting range
in Simsbury, Connecticut, for the past fifteen years.  Am. Compl.
¶ 2.  "Members and guests are allowed to use shotguns, assault
rifles, automatic weapons, anti-tank guns, and all other large
and small firearms at the Site."  Id.  The club is on Nod Road,
which "runs alongside the Farmington River and separates the
river from the Site.  The Site is situated on an area of
extensive wetlands and streams and is part of an area designated
as a Flood Plain which becomes flooded many times during the
year, but especially in the Spring."  Id. ¶ 13.  Bordering the
firing range are a golf course, a riding stable, a State Police
firing range, a private home and Talcott Mountain State Park.
Id.

The complaint alleges that "The Defendants' operations
include the discharge of chromium, lead, lead shot, lead bullets,

2

ammunition fragments, ammunition wadding and other ammunition to surface waters and to sediments and soils on the Site.  Due to inadequate safety measures and the range of shot from automatic rifles used by the Defendants, significant amounts of [these materials] are discharged into Talcott Mountain State Park."  Id. ¶ 15.

Plaintiffs estimate that "thousands of pounds of lead" have been deposited on the defendant's land and adjacent areas since approximately 1980.  Id. ¶ 16.  This lead, they allege, has contaminated ground water and sediments on the site, and "directly contaminates the Farmington River several times each year when said river floods onto the Site."  Id. ¶ 19. Plaintiffs further state that "analyses of soils, surface waters and sediments on the Site and on property adjacent to the Site show serious contamination from lead, well above" levels approved by the Connecticut Department of Environmental Protection.  Id. ¶ 20.  These levels of lead cause "damage to aquatic biota, bird[s] and other wildlife" and can cause lead poisoning in children who use the shooting range and play on adjacent property.  Id. ¶¶ 22, 24-26.  Plaintiffs allege that "Defendants have never conducted a clean-up operation of lead from shooting activities on the Site or on property adjacent to the Site."  Id. ¶ 21.

The Society is comprised of homeowners who live adjacent to and near the Site.  Three individual plaintiffs--Robert

Patricelli, Greg Silpe and Gayle March--are residents of Simsbury, and three--Rinaldo Tedeschi, Diane Tedeschi and Sheldon Cherry--are residents of Avon.  Id. ¶ 10.  "Members of the Preservation Society depend upon water resources in the immediate vicinity of the Site and enjoy recreation activities and wildlife in the area."  Id.  They allege that the "quality of the environment in the vicinity of the Site directly affects the[ir] health, recreational, aesthetic and environmental interests ...."  Id. ¶ 11.

Plaintiffs' first RCRA claim alleges that defendants have engaged in ongoing "open dumping" of lead and lead debris, said to be a "solid" or "hazardous waste," in violation of 42 U.S.C. § 6945.  The second claim, which arises under subchapter III of RCRA, alleges that defendant, as an owner and operator of a waste facility, has engaged in ongoing hazardous waste disposal without a permit from the EPA or DEP, in violation of 42 U.S.C. § 6925. The third RCRA claim alleges that defendant's "discharges of lead at the Site have created and continue to create an imminent and substantial endangerment, within the meaning of ... 42 U.S.C. § 6973, to the wetlands, surface waters, sediments, soils and biota at and near the Site."  Am. Compl. ¶ 43.

Plaintiffs' first CWA claim alleges that defendant has discharged lead bullets and debris into the Farmington River and its wetlands and tributaries without a permit from EPA or DEP, in

violation of 33 U.S.C. § 1342, and the second claim alleges that "[n]either the Army Corps of Engineers nor the DEP has issued permits pursuant to the CWA for the discharge of fill material containing lead into waters on or near the site," and therefore defendant is in violation of 33 U.S.C. § 1344 for ongoing discharges into the water.  Am. Compl. ¶ 52.  Plaintiffs seek declaratory and injunctive relief as well as civil penalties of up to $25,000 per day for each violation under RCRA and CWA. Defendant now moves to dismiss all claims of the complaint.

## II.  Standard

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).  To survive the motion, the plaintiff must set forth "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)), see also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).  A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S.

5

at 45-46 (footnote omitted), see also Jahgory v. NY State Dep't
of Educ., 131 F.3d 326, 329 (2d Cir. 1997).  "The issue is not
whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claims.
Indeed it may appear on the face of the pleadings that a recovery
is very remote and unlikely but that is not the test."  Scheuer
v. Rhodes, 416 U.S. 232, 236 (1974).

## III. Discussion

### A.   Standing of Simsbury-Avon Preservation Society

Defendant challenges the standing of the Society to bring
suit in its own name and on behalf of its members.  Defendant
asserts that the "Plaintiff LLC was effectively formed and
recognized by the Secretary of the State of Connecticut on May
18, 2004.  At the time this suit was filed on May 13, 2004,
however, the Plaintiff LLC did not legally exist."  Mem. of Law
in Support of Def. Mot. to Dismiss [Doc. #10] at 2.  Defendant
further argues that "[b]ecause the plaintiff entity lacked
standing to bring the lawsuit, adding individual plaintiffs does
not cure the original defect."  Id. at 4-5.

The Court disagrees with defendant's contentions.  Even if
the Society were not officially incorporated until May 18, five
days after the instant complaint was filed, the Society and its
individual members have standing to sue.  As Judge Beach held in
a companion state case to this action, the Society was a de facto

corporation on May 11, the date its articles of incorporation were first submitted, even if the paperwork was returned to its attorney due to a technicality (a missing address) two days later. Simsbury-Avon Preservation Society, LLC v. Metacon Gun Club, Inc., No. CV 04-0834190S, 2004 WL 2094933 at *1 (Conn. Super. Ct., Aug. 20. 2004).

Additionally, the Society need not have adopted any particular corporate form in order to sue on behalf of its members, as long as its members also have individual standing to bring this action. Friends of the Earth v. Laidlaw Envtl. Servs., 528 U.S. 167, 181 (2000) ("An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.") (citing Hunt v. Wash. State. Apple Ad. Comm'n., 432 U.S. 333, 343 (1977)).[1]  Defendant does not argue that the Society's members

---

[1]It is especially appropriate for an association to sue on behalf of its members where injunctive relief is sought, as in the present case. Warth v. Seldin, 422 U.S. 490, 515 (1975) ("whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought.  If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.").

lack individual standing, nor does defendant challenge the
sufficiency of the allegations in the complaint that the six
named plaintiffs, who are also members of the Society, live
adjacent to the site, "depend upon water resources in the
immediate vicinity of the Site and enjoy recreation activities
and wildlife in the area," and "share a common concern about the
quality of the environment in the vicinity... ."  Am. Compl. ¶
10.  The Supreme Court has "held that environmental plaintiffs
adequately allege injury in fact when they aver that they use the
affected area and are persons 'for whom the aesthetic and
recreational values of the area will be lessened' by the
challenged activity."  Friends of the Earth, 528 U.S. at 183
(quoting Sierra Club v. Morton, 405 U.S. 727, 735 (1972)).  Under
this standard, the individual plaintiffs in the present action
have standing, and the Society has standing to represent its
members.  Defendant's motion to dismiss for lack of standing
therefore is denied.

**B.   Sufficiency of the RCRA Subchapter III Claim**

Defendant also moves to dismiss Count Two of the complaint,
which alleges that defendant has violated subchapter III of RCRA,
42 U.S.C. § 6925(a), prohibiting "treatment, storage, or
disposal" of "hazardous waste" without a permit.  The statute
defines "hazardous waste" as a subset of "solid waste:"

> The term 'hazardous waste' means a solid waste ... which
> because of its quantity, concentration, or physical,

chemical, or infectious characteristics may--
   (A) cause, or significantly contribute to an increase
in mortality or an increase in serious irreversible, or
incapacitating reversible, illness; or
   (B) pose a substantial present or potential hazard to
human health or the environment when improperly treated,
stored, transported, or disposed of, or otherwise
managed.

42 U.S.C. § 6903(5).  The definition of "solid waste" is complex

and varies with the RCRA violation alleged.  The statute defines

solid waste as: "any garbage, refuse, sludge from a waste

treatment plant, water supply treatment plant, or air pollution

control facility and other discarded material, including solid,

liquid, semisolid, or contained gaseous material resulting from

industrial, commercial, mining, and agricultural operations, and

from community activities..."  42 U.S.C. § 6903(27).  However,

"the regulatory definition of solid waste -- found at 40 C.F.R. §

261.2(a) -- is narrower than its statutory counterpart."

Connecticut Coastal Fishermen's Assoc. v. Remington Arms Co., 989

F.2d 1305, 1314 (2d Cir. 1993).  "[T]he broader statutory

definition of solid waste applies to citizen suits brought to

abate imminent hazard to health or the environment" under 42

U.S.C. § 6972(a)(1)(B),[2] but the stricter regulatory definition

_____

   [2] "[A]ny person may commence a civil action on his own
behalf--
  (1)(A) against any person ... who is alleged to be in violation
of any permit, standard, regulation, condition, requirement,
prohibition, or order which has become effective pursuant to this
chapter; or
   (B) against any person, ... who has contributed or who is
contributing to the past or present handling, storage, treatment,

applies to citizen suits under § 6972(a)(1)(A) alleging violations of applicable permitting requirements, id. at 1315, as in Count Two of the instant complaint.

The regulations define solid waste as "any discarded material" and further define discarded material as that which is "abandoned by being: (1) Disposed of; or (2) Burned or incinerated; or (3) Accumulated, stored, or treated (but not recycled) before or in lieu of being abandoned ... ."  40 C.F.R. § 261.2(a)-(b).  In other words, the regulation essentially adds a requirement to the statutory definition that the discarded material also be "abandoned" to be considered solid waste.  See Water Keeper Alliance v. United States Dept. of Defense, 152 F. Supp. 2d 163, 167 n. 4 (D.P.R. 2001).

Plaintiffs in Connecticut Coastal brought a complaint against a trap and skeet shooting club for violations of RCRA and CWA, alleging that it had deposited 5 million pounds of lead shot and 11 million pounds of clay target fragments on its land and the adjacent waters of Long Island Sound, and failed to take any remedial measures to clean up the deposited materials.  989 F.2d at 1308.  The Second Circuit held that the lead shot constituted "solid waste" under the statutory definition: "Without deciding how long materials must accumulate before they become discarded -

_____

transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment ..."  42 U.S.C. § 6972(a).

that is, when the shot is fired or at some later time - we agree
that the lead shot and clay targets in Long Island Sound have
accumulated long enough to be considered solid waste." <u>Id.</u> at
1316.[3]  The Court of Appeals declined to decide whether the lead
shot was solid waste within the narrower regulatory definition.
<u>Id.</u> at 1315-16.  It noted, however, that the EPA as <u>amicus</u> took
the position that the lead shot and clay targets did not fall
within the regulatory definition of solid waste.  <u>Id.</u> at 1315.

The EPA took the same position as <u>amicus</u> in a 1996 case
involving another trap and skeet shooting club that deposited
lead ammunition and clay fragments in the waters of Long Island
Sound.  <u>Long Island Soundkeeper Fund v. N.Y. Athletic Club</u>, No.
94Civ.0436 (RPP), 1996 WL 131863 at * 8-9 (S.D.N.Y., March 22,
1996).

> Spent rounds of ammunition and target fragments are
> not, the EPA asserts, "discarded material" within the
> meaning of the regulation, because they have not been
> "abandoned" as that term is defined in the ...
> regulation.  Because the shot and target fragments come
> to rest on land and in water surrounding [defendant's
> property] as a result of their proper and expected use,
> the EPA contends that its permitting requirements are
> not applicable.

<u>Id.</u> at *9.  The district court in that case concluded that "the

---

[3]<u>Compare</u> <u>Water Keeper Alliance v. United States Dept. of
Defense</u>, 152 F. Supp. 2d 163, 167 (D.P.R. 2001) (holding that
military munitions exploded on firing range at Vieques, Puerto
Rico, did not, as plaintiff argued, constitute solid waste within
the meaning of the RCRA statute as soon as it was fired, because
"ordnance does not become discarded material until some time
after it has served its intended purpose.").

EPA's interpretation of its own regulations is reasonable ... and is entitled to deference...," and therefore granted defendant's motion for summary judgment on plaintiffs' RCRA subchapter III claim.

This district also has held that lead shot and target debris deposited on the site of a gun club "have not been 'abandoned,' but rather used as anticipated," and therefore do not constitute solid waste within the meaning of the regulations.  <u>Homeowners' Assoc. of East Lyme, LLC, v. Niantic Sportsmen's Club, Inc.</u>, No. 3:95cv2621 (JCH), slip op. at 35, attached to Mem. of Law in Support of Def. Mot. to Dismiss [Doc. # 10] as Ex. C.  That case, with facts nearly identical to the present one, concerned a trap and skeet club that was alleged to have contaminated the waters and sediments of Bride Brook in Connecticut with approximately 103-129 tons of lead shot and clay debris.  Plaintiff brought three RCRA and two CWA claims against defendant, and defendant moved to dismiss the RCRA subchapter III claim.  The district court granted the motion, following <u>Connecticut Coastal</u> and <u>Long Island Soundkeepers</u> and holding that the EPA's "reading of its own regulatory definition of 'discarded' to exclude spent shot and target fragments at a shooting range" was "reasonable, and as such, entitled to deference."  <u>Niantic Sportsmen's Club</u> at 35.

Subsequently, in January 2001, the EPA published a guidance booklet entitled "Best Management Practices for Lead at Outdoor

Shooting Ranges."  EPA Pub. EPA-902-B-01-001, Mem. of Law in Support of Def. Mot. to Dismiss, Ex. D.  In this publication, EPA states, "[l]ead shot is not considered a hazardous waste subject to RCRA at the time it is discharged from a firearm because it is used for its intended purpose.  As such, shooting lead shot (or bullets) is not regulated <u>nor is a RCRA permit required</u> to operate a shooting range."  <u>Id.</u> (emphasis added).[4]

Conducting an analysis pursuant to <u>Chevron, USA v. Natural Resources Defense Council</u>, 467 U.S. 837 (1984), the Second Circuit held that RCRA is ambiguous because neither the statutory language nor its legislative history "tell[s] us at what point products have served their intended purposes."  <u>Connecticut Coastal</u>, 989 F.2d at 1314.  It further held that the EPA's definition of "solid waste" for purposes of permit violation claims was entitled to deference because RCRA subchapter III specifically "contemplate[s] that the EPA would refine and narrow the definition of solid waste" by publishing "specific 'criteria' for the identification of hazardous wastes," in contrast with subchapter IV, where Congress only authorized EPA "to publish 'guidelines' for the identification of problem solid waste

---

[4]The EPA takes the position, however, that "spent lead shot (or bullets) left in the environment is subject to the broader definition of solid waste written by Congress and used in sections 7002 and 7003 of the RCRA statute," and therefore the remainder of the publication instructs shooting range operators how to reclaim and recycle lead shot.  EPA Pub. EPA-902-B-01-001.

pollution areas..."  Connecticut Coastal at 1315.

This Court concludes that the EPA's interpretation excluding lead shot and bullets from the definition of "solid waste" is reasonable.  At the time a target shooter fires a bullet, the shooter is not intending to "abandon" the bullet, but rather to use it to hit a target.  He or she is putting the lead bullet to its intended use.  At some point after the bullet is left on the ground or in the water it may become "discarded" and subject to RCRA's remediation provisions, Connecticut Coastal, 989 F.2d at 1316,  which are implicated in Counts One and Three of plaintiffs' Amended Complaint.  However, a shooter is not engaged in the abandonment of hazardous waste at the time the shot is fired, and therefore it is reasonable not to require a permit for this activity.

Accordingly, Count Two of plaintiff's complaint, brought under RCRA subchapter III, fails to state a claim on which relief can be granted and is dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**C.   Remaining Claims**

Defendant argues that because the RCRA subchapter III claim is the only claim in the complaint permitting plaintiffs to file their lawsuit immediately after giving notice, see 42 U.S.C. § 6972(b)(2)(A), the remaining claims must be dismissed because plaintiffs did not abide by the statutory notice period.  See 33

U.S.C. § 1365(b)(1)(A) ("No action may be commenced [under CWA]
... prior to sixty days after the plaintiff has given notice of
the alleged violation (i) to the Administrator [of EPA], (ii) to
the State in which the alleged violation occurs, and (iii) to any
alleged violator ..."); 42 U.S.C. §§ 6972(b)(1)(A), (b)(2)(A)
(sixty day notice to same parties required before filing suit for
alleged violations of RCRA permit requirements; ninety days pre-
suit notice to same parties required for RCRA "imminent and
substantial endangerment" claims).  "Compliance with the 60-day
notice provision is a mandatory, not optional, condition
precedent for suit," and failure to comply compels dismissal of
the action.  <u>Hallstrom v. Tillamook County</u>, 493 U.S. 20, 26, 33
(1989).[5]

Where a party brings a "hybrid" complaint alleging both
subchapter III and non-subchapter III claims, the notice and
delay requirements are inapplicable.  <u>Daque v. City of
Burlington</u>, 935 F.2d 1343, 1351 (2d Cir. 1991), <u>rev'd in part on
other grounds</u>, 505 U.S. 557 (1992).  To properly circumvent the
notice otherwise required by statute, a plaintiff's subchapter
III claims must not be "frivolous" and must be "closely related"
to the non-subchapter III claims.  <u>Id.</u> at 1352.

Plaintiff's subchapter III claim in this case was not

---

[5]<u>Hallstrom</u>, 493 U.S. at 22, involved claims under RCRA only,
but the language of the statutory notice and delay requirements
of RCRA § 6972(b) is identical to that of § 1365(b) of CWA.

frivolous.  Although this Court has concluded that the EPA's interpretation of the applicable hazardous waste regulations, that lead bullets do not constitute "discarded material," is not unreasonable, <u>supra</u> § III.B, the Second Circuit has not decided this issue.  <u>See</u> <u>Connecticut Coastal</u>, 989 F.2d at 1315-1316.  In the absence of controlling authority, plaintiff's subchapter III claim will be deemed non-frivolous.  <u>Niantic Sportsmen's Club</u>, slip op. at 13 n. 3.  Additionally, plaintiff's subchapter III claim was "closely related" to the non-subchapter III claims because the "claims all arose from the operation of a single facility and are based on the same core of interrelated facts," <u>Daque</u>, 935 F.2d at 1352, namely defendant's operation of the shooting range at the Metacon Gun Club.  Thus plaintiffs properly brought a hybrid complaint, and "the fact that [plaintiffs were] not ultimately entitled to relief on [their subchapter III claim] has no bearing on whether [their remaining] allegations are sufficient to keep [the] hybrid complaint in court."  <u>AM Int'l, Inc. v. Datacard Corp.</u>, 106 F.3d 1342, 1351 (7th Cir. 1997).

     Therefore defendant's motion to dismiss the remaining counts of the complaint for lack of notice is denied.  Defendant does not move to dismiss plaintiff's remaining claims on their merits, and therefore Counts One, Three, Four and Five remain.

**IV.  Conclusion**

     Accordingly, defendant's motion to dismiss is GRANTED IN

PART as to Count Two of the complaint and DENIED IN PART as to

the remaining claims and the standing of the Simsbury-Avon

Preservation Society.  Pursuant to the scheduling order entered

in this case [Doc. # 7], the parties' Rule 26(f) planning report

is due seven days from the date of this order.

                              IT IS SO ORDERED.


                              /s/_____
                              JANET BOND ARTERTON
                              United States District Judge

**Dated at New Haven, Connecticut, this 14th day of June, 2005.**