```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

SIMSBURY-AVON PRESERVATION         :
SOCIETY, LLC, et al.,              :
     Plaintiffs,                   :
                                   :  Civil No. 3:04cv803(JBA)
v.                                 :
                                   :
METACON GUN CLUB, INC.,            :
     Defendants.                   :
```

**RULING ON DEFENDANT'S MOTION FOR RECONSIDERATION [DOC. # 43]**

Defendant Metacon Gun Club, Inc. ("Metacon") moves for reconsideration of the Court's Ruling, Simsbury-Avon Preservation Soc. v. Metacon Gun Club, Inc., No. 3:04cv803 (JBA), 2006 WL 2223946 (D. Conn. Aug. 2, 2006), [Doc. # 41], granting in part and denying in part its motion for dismissal and summary judgment. Defendant argues that the Court erred in holding that individual plaintiff Gregory Silpe has standing to bring a Clean Water Act ("CWA") claim against Metacon. For the following reasons, defendant's motion for reconsideration [Doc. # 43] will be denied.

**I.   Background**

Familiarity with the Court's two previous Rulings in this case is presumed. See Simsbury-Avon Preservation. Soc., 2006 WL 2223946; Simsbury-Avon Preservation Soc. v. Metacon Gun Club, No. 3:04cv803 (JBA), 2005 WL 1413183 (D. Conn. June 14, 2005), [Doc. # 14]. Briefly, Metacon first moved to dismiss the complaint on the grounds that the Simsbury-Avon Preservation Society ("SAPS")

1

lacked standing to sue because it was not a properly formed Connecticut corporation prior to the filing of the complaint. The Court denied that motion on the grounds that SAPS was a <u>de facto</u> corporation and, regardless of its form, an organization has standing to sue if one or more individual members of the organization has standing.  Because the individual plaintiffs had alleged personal harm from pollution caused by lead bullets on the Metacon firing range, and because Metacon had not challenged the individual plaintiffs' standing, the Court denied the motion to dismiss.

    After the close of discovery, Metacon brought a motion for summary judgment and dismissal for lack of subject matter jurisdiction, arguing that neither SAPS nor the individual plaintiffs had standing because they had not shown that they had suffered actual injury.  The Court granted the motion to dismiss individual plaintiffs Gail March, Diane Tedeschi, Robert Patricelli, and Sheldon Cherry, who had not proffered any evidence concerning injuries they may have incurred due to the alleged pollution at defendants' site.  The Court also dismissed the claims of Rinaldo Tedeschi, whose evidence the Court deemed insufficient because he failed to aver whether he believed he had been exposed to lead from Metacon.  However, the motion was denied as to plaintiff Gregory Silpe, who averred that he no longer hikes ridge trails in the neighboring Talcott Mountain

State Park or fishes in the Farmington River due to his belief that these areas are contaminated by lead from Metacon.  The Court specifically addressed and rejected defendant's argument that Silpe could not establish standing because he had not proved the park or river to be polluted by lead from Metacon, holding that defendant's argument confused "the standing inquiry with the merits inquiry."  Simsbury-Avon Preservation Soc., 2006 WL 2223946, at *5.

**II.  Standard**

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted).  Reconsideration is appropriate only "if there has been an intervening change in controlling law, there is new evidence, or a need is shown to correct a clear error of law or to prevent manifest injustice."  United States v. Sanchez, 35 F.3d 673, 677 (2d Cir. 1994) (citations omitted).

**III. Discussion**

   **A. Los Angeles v. Lyons**

Defendant primarily argues that the Court overlooked controlling Supreme Court authority in Los Angeles v. Lyons, 461

3

U.S. 95 (1983).  In Lyons, 461 U.S. at 105-06, the Supreme Court held that a plaintiff who sought to enjoin the Los Angeles Police Department from employing allegedly unconstitutional chokeholds on suspects lacked standing because, although he had been subjected to a chokehold in the past, he could not show that he was likely to be so treated in the future, absent allegations either that all Los Angeles police officers always employed such restraints or that the Police Department ordered or authorized the officers to act in such a manner.  Importantly, Lyons sought only injunctive relief, and thus the Supreme Court held that while Lyons' allegations "presumably afford[ed] [him] standing to claim damages against the individual officers and perhaps against the City," he lacked standing to pursue injunctive relief on the facts alleged.  Id. at 105; see also id. at 111 (Even "if it be assumed that [Lyons'] pending damages suit affords him Article III standing to seek an injunction ... [t]he equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again...").

    Lyons therefore is distinguishable from the present case, in which plaintiffs seek retrospective relief, including remediation of polluted water resources and civil penalties, as well as prospective injunctive relief.  See Am. Compl. [Doc. # 12] ¶¶

IV.9, IV.11.[1]  Defendant appears to have confused the discussion in Lyons regarding the standard for granting an injunction -- "likelihood of substantial and immediate irreparable injury" -- with the "case or controversy" requirements of Art. III.  See Lyons, 461 U.S. at 111.  At the very least, defendant fails to grasp that Lyons established a distinction between the requirements to pursue prospective injunctive relief and those to pursue retrospective relief.

The Supreme Court subsequently held in Friends of the Earth v. Laidlaw, 528 U.S. 167, 183 (2000), a Clean Water Act case, "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." (quoting Sierra Club v. Morton, 405 U.S. 727, 735 (1972)).  As Metacon points out, Laidlaw distinguished Lyons on the basis that "it is undisputed that Laidlaw's unlawful conduct--discharging pollutants in excess of permit limits--was occurring at the time the complaint was

---

[1] While "a plaintiff must demonstrate standing separately for each form of relief sought," Laidlaw, 528 U.S. at 185, Metacon has not limited its argument to asserting that Silpe lacks standing to seek an injunction, but argues that he lacks standing to seek any relief at all in this case.  Even if Metacon moved to dismiss plaintiff's request for injunctive relief on the basis of lack of standing, Silpe would still have standing to assert his other claims for relief.  Therefore any argument that injunctive relief is inappropriate may be addressed after trial should plaintiff prevail on the Clean Water Act claim.

filed," and therefore the plaintiffs' fear of future harm from the pollution was reasonable.  Laidlaw, 528 U.S. at 184.  Again, however, the Supreme Court was careful to distinguish that this holding only applied to plaintiffs' request for injunctive relief.  Id. at 184; see also id. at 185 ("[T]he issue" with respect to "civil penalties" "is not injury but redressability.").  Furthermore, the Supreme Court's statement that Laidlaw's violation of its discharge permit was undisputed was an observation, not a requirement; the Supreme Court did not hold that a plaintiff must prove that the CWA violation took place to establish standing to seek remediation and/or civil penalties.

As this Court previously held, defendant's reading of Laidlaw confuses the merits inquiry with the standing inquiry.  Standing is a threshold matter.  While at the summary judgment stage, the party asserting standing has the burden of proof, Building & Construc. Trades Council of Buffalo v. Downtown Development, Inc., 448 F.3d 138, 145 (2d Cir. 2006), and must affirmatively show an actual injury in fact, causation, and redressability, Laidlaw, 528 U.S. at 180-81, a plaintiff need not prove the merits of the case to establish standing.

The Supreme Court specifically rejected the contrary argument in Laidlaw, id. at 181, holding that "[t]he relevant showing for purposes of Article III standing ... is not injury to

6

the environment but injury to the plaintiff.  To insist upon the former rather than the latter as part of the standing inquiry ... is to raise the standing hurdle higher than the necessary showing for success on the merits in an action alleging noncompliance with an NPDES permit."

Thus plaintiffs in this case (Silpe and, through him, SAPS) need not show violation of the Clean Water Act permitting requirements, nor actual damage to the Farmington River from lead pollution, to establish standing.  Rather, the issue is whether they can establish that their recreational, aesthetic, economic or other interests have been harmed by Metacon's alleged Clean Water Act violations.  The Court previously ruled that Silpe had met this burden because he stated in his affidavit that he feared he could be harmed by lead pollution in the Farmington River were he to resume fishing in this area.[2]  Silpe's claim was held not to be speculative because his evidence showed the presence of lead contamination in Metacon's soil.

Defendant argues that the Court, in so holding, "overlooked"

---

[2]Also in his affidavit, plaintiff Silpe expresses fear of being harmed by lead pollution in Talcott Mountain State Park were he to resume hiking there.  Because both Resource Conservation and Recovery Act (RCRA) claims have dropped out of the case, leaving only one viable Clean Water Act claim, plaintiff's standing is based solely on his relationship to the River and his desire to fish there.  By admission of plaintiff's counsel in a telephone status conference on August 22, 2006, Silpe's statement with respect to hiking on Talcott Mountain ridge is no longer a basis of standing.

its "evidence that it is extremely unlikely, and perhaps not even possible, that lead from Metacon will ever enter water Mr. Silpe desires to use (the Farmington River)." Mem. in Support of Mot. for Recon. [Doc. # 43-2] at 7. On the contrary, the Court fully reviewed both defendant's and plaintiffs' record evidence concerning lead levels in the soil and water at and near the Metacon site. See Simsbury-Avon Preservation Soc., 2006 WL 2223946 at *2-3.[3] The evidence suggested that, while lead may not have contaminated the groundwater on the site yet, arsenic concentration levels from three monitoring wells and one wetland location in October 2003 demonstrated contamination, and at least one dissolved lead concentration from March 2004 exceeded the Connecticut Drinking Water Standard for lead. Id. at *2. Defendant's expert testified at a previous hearing in Superior Court that it was unlikely that lead from the soil on the site would leach into the Farmington River, given the soil composition; however, he did not opine that it would be impossible for the lead from Metacon's soil to enter the groundwater, and from there the Farmington River. The Court did

---

[3] Defendant correctly points out a factual misstatement in the Court's Ruling on Defendant's Motion for Summary Judgment and Motion to Strike, Simsbury-Avon Preservation. Soc., 2006 WL 2223946, at *2, with respect to two March 2004 data from Table 1 of defendant's Exhibit 7, submitted in support of its Motion for summary Judgment. In fact, the well readings of 0.003 and 0.002 mg/L are below, not above, the state regulation maximum level of 0.015, Def.'s Mot. for Summ. J. [Doc. #32] Ex. 7, tbl.1.

not overlook defendant's proffered evidence.  Rather, that evidence is equivocal, and does not preclude the possibility that plaintiff could show at trial that the lead could leach into the Farmington River and harm him were he to decide to resume fishing in the river.

Defendant argues, on the basis of Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001), that any such disputes of fact that goes to the Court's subject matter jurisdiction must be resolved prior to trial.  The First Circuit held in Valentin that a factual dispute concerning a party's citizenship should be resolved prior to trial in a diversity case; this type of preliminary factual question plainly is different from requiring plaintiff Silpe to prove the facts necessary to prevail on the merits of his CWA claim in order to establish standing.  This Court will not read Valentin or the Supreme Court's decisions on Art. III standing so broadly.

**B. Rapanos v. United States**

Finally, defendant argues that the Supreme Court's recent plurality opinion in Rapanos v. United States, __ U.S. __, 126 S. Ct. 2208, 2221 (2006), requires this Court to reconsider its prior Ruling.[4]  Since that was not a part of the summary judgment

---

[4]Defendant also relies on Rapanos in asking the Court to reconsider Metacon's previously-asserted Second Amendment claims. See Mem. in Supp. of Mot. for Recons. [Doc. #43-2] 11.  The Court rejects this argument.  Rapanos did not address the Second Amendment, and its dicta concerning respect for land use

motion on which reconsideration is sought--Rapanos had not been decided yet--the Court has instead given defendant leave to file a second summary judgment motion focusing on the specific issues raised by Rapanos as applied to this case.

**IV. Conclusion**

Metacon has not pointed to any overlooked controlling legal authority or factual data requiring the Court to reconsider its August 1, 2006 Ruling. Accordingly, Metacon's motion for reconsideration [Doc. # 43] is DENIED.

                                     IT IS SO ORDERED.

                                     /s/
                                    _____
                                    JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 23rd day of August, 2006.**

---

decisions by local and state authorities, 126 S. Ct. 2223-24, is not a "controlling decision," Shrader v. CSX Transp., Inc., 70 F.3d at 257, requiring reconsideration.