UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Simsbury–Avon Preservation Society, LLC, et al., *Plaintiffs*, <br><br> v. <br><br> Metacon Gun Club, Inc., *Defendant*. | Civil No. 3:04cv803 (JBA) <br><br><br><br> March 29, 2010 |

ORDER ON DEFENDANT'S MOTIONS FOR ATTORNEY AND EXPERT WITNESS FEES AND FOR EVIDENTIARY HEARING [Doc. ## 74, 78]

In 2004 the Simsbury–Avon Preservation Society, LLC ("SAPS") and six of its members (collectively, "Plaintiffs") brought a five-count complaint against Defendant Metacon Gun Club, Inc. ("Metacon" or "Defendant") under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.*, and the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.* In a total of four rulings, the last of which addressed an intervening change in the law, the Court dismissed one RCRA claim and granted Metacon summary judgment on the remaining four. Following affirmance by the Second Circuit, Metacon has moved for attorney and expert witness fees under the RCRA and CWA attorney-fee provisions. For the reasons that follow, its motions will be denied.

I.  Standard

Plaintiffs brought suit under the "citizen suit" provisions of RCRA, 42 U.S.C. § 6972, and the CWA, 33 U.S.C. § 1365. These statutes contain provisions governing the award of costs and fees that are materially identical. In pertinent part, the CWA provides:

The court, in issuing any final order in any action brought pursuant to this

section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate.

33 U.S.C. § 1365(d); *compare* 42 U.S.C. § 6972(e).

The parties agree that "[n]either the Supreme Court nor the Second Circuit has established a standard for determining when it is appropriate to award attorney's fees to a prevailing defendant in a citizen suit under RCRA or CWA." (Def.'s Mem. Supp. [Doc. # 74-2] at 3–5; *compare* Pls.' Opp'n [Doc. # 86] at 4–5.) They also agree that the correct standard to apply is the one discussed in *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412 (1978), which addressed an award of fees to a prevailing defendant under the attorney-fee provision of Title VII, 42 U.S.C. § 2000e-5(k).[1] In *Christiansburg*, the Supreme Court held that "a district court may in its discretion award attorney's fees to a prevailing defendant . . . upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." 434 U.S. at 421.

The parties are correct that *Christiansburg* provides the proper standard to apply here. Although the Second Circuit has never squarely addressed the issue, it has suggested as much. *See Dague v. City of Burlington*, 935 F.2d 1343, 1357 (2d Cir. 1991) ("the principles governing fee awards under" § 1988 "are applicable to the attorney's fee provisions" in

---

[1] "In any action or proceeding under [Title VII] the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k).

"[b]oth RCRA and the CWA"), *rev'd on other grounds sub nom., City of Burlington v. Dague*, 505 U.S. 557 (1992). The Supreme Court has held that because the attorney-fee provisions of RCRA and the CWA is a "typical federal fee-shifting statute" whose "language is similar to that of many other federal fee-shifting statutes, see, *e.g.*, 42 U.S.C. §§ 1988, 2000e-5(k), 7604(d)," its "case law construing what is a 'reasonable' fee applies uniformly to all of them." *Dague*, 505 U.S. at 561–62. Other case-law strongly suggests this to be the correct standard. In *Pennsylvania v. Delaware Valley Citizens' Council*, the Supreme Court held that "[g]iven the common purpose of both" § 1988 and a different citizen-suit provision of the CWA, 42 U.S.C. § 7604(d), "to promote citizen enforcement of important federal policies," there was "no reason not to interpret both provisions governing attorney's fees in the same manner." 478 U.S. 546, 560 (1986) ("*Delaware Valley I*"). Several circuits have addressed the question of when to award attorney fees to prevailing defendants in RCRA or CWA actions, and all apply the *Christiansburg* standard to prevailing defendants' attorney-fee motions in RCRA or CWA actions.[2] And several district courts, including some within the Second Circuit,

---

[2] *See Browder v. City of Moab*, 427 F.3d 717, 723 (10th Cir. 2005) (holding that *Christiansburg* standard applies to defendant's attorney-fee motion under RCRA); *Sierra Club v. City of Little Rock*, 351 F.3d 840, 846–47 (8th Cir. 2003) (applying *Christiansburg* to defendant's attorney-fee motion under CWA); *Citizens for a Better Env't v. Steel Co.*, 230 F.3d 923, 931 (7th Cir. 2000) (holding that *Delaware Valley I* stands for the proposition that "environmental fee-shifting laws should be governed by the same principles as fee-shifting under § 1988," which is "a statute covered by *Christiansburg*'s asymmetric approach"); *Marbled Murrelet v. Babbitt*, 182 F.3d 1091, 1094 (9th Cir. 1999) (explaining that the Ninth Circuit has "adopted for RCRA and the CWA the *Christiansburg* civil rights standard of frivolousness"); *accord Morris-Smith v. Moulton Niguel Water Dist.*, 234 F.3d 1277 (Table), 2000 WL 1195538, *2 (9th Cir. Aug. 21, 2000) (under the CWA); *Palumbo v. Waste Techs.*

have also applied the same *Christiansburg* standard.[3]

In sum, a defendant who "prevail[s] or substantially prevail[s]" in a citizen suit brought under RCRA or the CWA is not entitled to "costs of litigation (including reasonable attorney and expert witness fees)," 33 U.S.C. § 1365(d), 42 U.S.C. § 6972(e), unless "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith," *Christiansburg*, 434 U.S. at 421. If "reasonable minds could differ as to the merits" of the plaintiff's ultimately unsuccessful action, then the action was not "frivolous or unreasonable" and an award of fees and costs is not warranted. *See, e.g., Equal Employment Opportunity Comm'n v. J.B. Hunt Transport, Inc.*, 75 F. App'x 853, 854 (2d Cir. 2003). In addition, if a plaintiff's claims are not "frivolous at the outset," then the defendant "may obtain fees only if 'the plaintiff continued to litigate after it[s claims] clearly became' frivolous." *Am. Fed'n of State, County & Municipal Employees, AFL–CIO v. County of Nassau*, 96 F.3d 644, 652 (2d Cir. 1996) ("*AFSCME*") (quoting *Hughes v. Rowe*, 449 U.S.

---

*Indus.*, 37 F.3d 1495 (Table), 1994 WL 577441, *1 (4th Cir. Oct. 20, 1994) (affirming district court's denial of attorney fees to prevailing defendant in RCRA action on the basis that the "appellees' suit was neither frivolous nor unreasonable").

[3] *See Atl. States Legal Found., Inc. v. Onondaga Dep't of Drainage and Sanitation*, 899 F. Supp. 84, 87–88 (N.D.N.Y. 1995) (under the CWA); *Coon v. Willet Dairy, LP*, Nos. 5:04cv917FJS/GJD & 5:02cv1195FJS/GJD, 2009 WL 890580, *1 (N.D.N.Y. Mar. 31, 2009) (following *Onondaga Dep't of Drainage and Sanitation*); *see also Envtl. Conservation Org. v. City of Dallas*, No. 3:03cv2951–BD, 2007 WL 4165917, *1 (N.D. Tex. Nov. 20, 2007) (under the CWA); *Nat'l Wildlife Fed'n v. Consumers Power Co.*, 729 F. Supp. 62, 64 (W.D. Mich. 1989) (following *Delaware Valley I* and "find[ing] that [the CWA, 33 U.S.C. § 1365(d)] allows prevailing defendants to recover litigation costs only where the plaintiff's claim is frivolous, meritless or vexatious").

5, 15 (1980), alterations in *AFSCME*); *see also Christiansburg*, 434 U.S. at 422 ("a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.").

II.     Discussion

     A.     Procedural History

This Court issued four rulings addressed to the merits of Plaintiffs' claims, eventually dismissing or granting Metacon summary judgment on each of them. The Second Circuit affirmed each of these rulings, but affirmed "on alternative grounds" as to one RCRA and one CWA claim. *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 202 (2d Cir. 2009) ("*Cordiano*").

When Plaintiffs filed suit[4] Metacon moved to dismiss, arguing that SAPS did not have organizational standing, that one claim—the RCRA subchapter III claim—failed to state a claim on which relief could be granted, and that Plaintiffs "did not abide by the statutory notice period" required for the remaining claims. The Court first rejected Metacon's claim that SAPS lacked organizational standing. In granting Metacon's Rule 12(b)(6) motion to dismiss the RCRA subchapter III claim, the Court explained that the question turned on whether the lead shot on Metacon's property was "abandoned," and

---

[4] SAPS alone filed the original complaint. (Compl. [Doc. # 1].) The amended complaint lists both SAPS and six of its members as plaintiffs. (*See* Am. Compl. [Doc. # 12].)

therefore "solid waste," for purposes of the pertinent U.S. Environmental Protection Agency ("EPA") regulations. It held that "[t]he definition of 'solid waste' is complex," and noted that in the past the Second Circuit had "declined to decide" the question of whether lead shot on a shooting range was "abandoned" under the regulations. *Simsbury–Avon Preservation Soc'y v. Metacon Gun Club, Inc.*, No. 3:04cv803(JBA), 2005 WL 1413183, *4 (D. Conn. June 14, 2005) ("*Metacon I*") (describing *Conn. Coastal Fishermen's Assoc. v. Remington Arms Co.*, 989 F.2d 1305, 1315–16 (2d Cir. 1993)). When Plaintiffs brought suit, the answer to this question—on which the viability of Plaintiffs' RCRA subchapter III claim turned—was not clear. Indeed, this Court expressly held that the subchapter III claim "was not frivolous" because "the absence of controlling authority" meant the legal questions underpinning the claim were unanswered when Plaintiffs brought suit. *Id.* at *6. The EPA had taken the position that "'lead shot is not considered hazardous waste subject to RCRA *at the time it is discharged from a firearm* because it is used for its intended purpose,'" but that "'spent lead shot (or bullets) *left in the environment* is subject to the broader [statutory] definition of solid waste,'" *id.* at *5 & n.4 (quoting EPA guidance booklet entitled "Best Management Practices for Lead at Outdoor Shooting Ranges") (emphases added), and in affirming dismissal the Second Circuit held that "[t]he regulation is ambiguous" and "provides no definitive answer" to the question, *Cordiano*, 575 F.3d at 207. That court requested from the United States "an *amicus* brief addressing whether lead shot discharged at a shooting range falls within the regulatory definition of solid waste set forth in" the regulation, *id.*, and

6

eventually determined the question by affording the EPA's interpretation of its own regulation—which it had provided in *amicus* briefs in this litigation and previous cases—deference under *Auer v. Robbins*, 519 U.S. 452, 462 (1997), *see Cordiano,* 575 F.3d at 207–09.  Finally, relying on the "'hybrid' complaint" rule—which holds that the "the notice and delay requirements are inapplicable" to "a 'hybrid' complaint alleging both subchapter III and non-subchapter III claims"—the Court refused to dismiss Plaintiffs' remaining claims.  *Metacon I* at *6.

Following discovery, Metacon moved to dismiss and for summary judgment. Metacon again argued that SAPS lacked organizational standing, and that each of the six individual plaintiffs also lacked standing.  The Court held that five of the plaintiffs lacked standing, but that one of them, Gregory Silpe, had standing, and that SAPS therefore also had standing.  *Simsbury–Avon Preservation Soc'y v. Metacon Gun Club, Inc.*, No. 3:04cv803(JBA), 2006 WL 2223946, *4–*7 (D. Conn. Aug. 2, 2006) ("*Metacon II*").  It then granted Metacon summary judgment as to all claims except one brought under the CWA, which Metacon had not challenged and which the Court held "remain[ed] for trial."  *Id.* at *3.  Returning to "RCRA's complex statutory and regulatory scheme" and the statute's undefined term "discarded material" that had been addressed in *Metacon I*, the Court noted that the Second Circuit had previously avoided "'deciding how long materials must accumulate before they become discarded—that is, when the shot is fired or at some later time,'" *Metacon II* at *8 (quoting *Conn. Coastal*, 989 F.2d at 1316), followed its own previous

decision to "grant[] deference" to "the EPA manual's application of the term 'solid waste,'" *id.* at \*9 (citing *Metacon I* at \*5), and held that the undisputed record showed that the lead bullets landed within Metacon's site and that "its members have 'regularly' cleaned up and recycled the lead bullets from the site," so they could not be "discarded" within the meaning of RCRA, *id.* at \*10, and therefore that Metacon was entitled to summary judgment on the RCRA claims, *id.* Following discovery Plaintiffs "agree[d] that judgment should enter in favor of Defendant" on one CWA claim (Pls.' Opp'n to Summ. J. [Doc. # 36-2] at 13), so the Court granted Metacon summary judgment on this claim, *see Metacon II* at \*1, \*10.

Metacon promptly moved for reconsideration of *Metacon II*, and again pressed their argument that Silpe—and therefore SAPS—lacked standing. Reiterating what it had "previously held"—that Metacon's argument "confuse[d] the merits inquiry with the standing inquiry"—the Court rejected Metacon's third standing challenge. *Simsbury–Avon Preservation Soc'y v. Metacon Gun Club, Inc.*, No. 3:04cv803(JBA), 2006 WL 2474978, \*3 (D. Conn. Aug. 25, 2006) ("*Metacon III*"); *see also Metacon II* at \*5 (explaining that Metacon's argument that Silpe lacks standing "confuses the standing inquiry with the merits inquiry"). Metacon also argued that the Supreme Court's decision in *Rapanos v. United States*, 547 U.S. 715 (2006), regarding the reach of the CWA's jurisdiction over navigable waters, which the Supreme Court issued after the close of summary-judgment briefing in this case, provided grounds to dismiss the claim that Metacon had previously declined to challenge before trial. The Court denied the motion on this ground, explaining that it had "given defendant leave

to file a second summary judgment motion focusing on the specific issues raised by *Rapanos* as applied to this case." *Metacon III* at *4.

Addressing *Rapanos*'s applicability to this case in a fourth ruling, this Court noted that "[t]he few courts attempting to apply *Rapanos* to date are not in accord as to its holding." It proceeded by "consider[ing] under both the plurality's and Justice Kennedy's standards the issue of whether the plaintiffs have demonstrated a genuine factual dispute about whether Metacon munitions are being discharged into the waters of the United States." *See Simsbury–Avon Preservation Soc'y v. Metacon Gun Club, Inc.*, 472 F. Supp. 2d 219, 225–227 (D. Conn. 2007) ("*Metacon IV*"). The Court then granted Metacon summary judgment on the remaining CWA claim, holding that Plaintiffs had "failed to adequately rebut defendant's evidence that pollutants at its range are not being discharged into navigable waters" under any of the standards announced in *Rapanos*. *Metacon IV* at 230.

B.	Frivolous, Unreasonable, or Without Foundation

First, none of Plaintiffs' claims were frivolous, unreasonable, or without foundation "at the outset" of the litigation. Instead, this case presented an unusual number of complex legal questions that had not been clearly resolved before Plaintiffs brought suit, and one that had not even existed at that time. When Plaintiffs brought suit in 2004, it was unclear whether the EPA would have the same interpretation of the statute as it had had as an *amicus* in a case decided 11 years earlier (but not in a promulgated regulation), or whether the district or appellate court would again defer to the EPA. Both this Court and the Second

9

Circuit described the issue as complex. In addition, the *Rapanos* decision presented another legal question that had not been resolved—or even raised—when Plaintiffs filed suit. It is clear from *Metacon III* and *Metacon IV* that had *Rapanos* not issued, the parties would have proceeded to trial on Plaintiff's remaining CWA claim. On appellate review the Second Circuit expressly declined to rule "on the issue whether wetlands on the Metacon site are jurisdictional under *Rapanos*," and instead affirmed "on [an] alternative ground" that Metacon had argued on appeal but had not raised before this Court—that there is no "material issue of fact as to whether Metacon discharges lead into such wetlands from a point source." *Cordiano*, 575 F.3d at 215.

Second, a plaintiff may not be held liable for a defendant's fees and costs incurred in defending against claims that were not frivolous at the outset unless the plaintiff continued to litigate the claims after adverse legal or factual developments that postdate the initiation of suit made clear that its claims were frivolous. The claims in this case were ultimately dismissed on the basis of legal and factual developments that do not show Plaintiffs' assertions to have been frivolous at any time. It was not clear when Plaintiffs brought suit that this Court and the Second Circuit would rely on the EPA in interpreting and applying "RCRA's complex statutory and regulatory scheme" defining and governing hazardous waste, nor should Plaintiffs have foreseen that, during the course of their litigation against Metacon, the Supreme Court would interpret and limit the jurisdictional reach of the CWA, as it did in *Rapanos*. Nor are fees and costs warranted on the basis of discovery having

10

revealed evidence that, as applied to the courts' EPA-assisted interpretation of RCRA, that was insufficient for Plaintiffs to withstand a summary-judgment motion. To the contrary, a plaintiff's mere failure to find in discovery the evidence it had expected at the outset to have found does not show or suggest the frivolity of the plaintiff's lawsuit. Instead, it is simply one of "the risks inhering in most litigation," and penalizing a plaintiff when it occurs by awarding the defendant costs and fees relies on a "kind of hindsight logic" that *Christiansburg* expressly forecloses. *See* 434 U.S. at 422. As noted, fees may be awarded against a plaintiff who brings claims that are not frivolous at the outset when, during or after discovery, "the plaintiff continued to litigate after [the claims] clearly became" frivolous, unreasonable, or groundless. *Id.* However, Plaintiffs did not continue litigating claims that discovery showed to be frivolous or clearly meritless. Indeed, following discovery Plaintiffs acknowledged that one of their CWA claim warranted dismissal, *see Metacon II* at *1, *10, and took a reasonable but unsuccessful legal position and proffered substantial but ultimately insufficient evidence in support of other claims, *see id.* at *8–*10. The final claim had remained for trial, *id.* at *10, and was thereafter dismissed on the basis of a jurisdictional limitation that arose only after summary-judgment briefing had concluded, *see Metacon IV*.

In requesting that Plaintiffs be held liable for its fees and costs, Metacon asks this Court to engage in the "*post hoc* reasoning" that the Supreme Court requires "a district court [to] resist." *Christiansburg*, 434 U.S. at 421–22. It is clear from "hindsight" that Plaintiffs' claims were not "airtight," but they were far from unreasonable. This litigation presented

11

just the sort of case—reasonable and not frivolous at the outset, and ultimately dismissed on the basis of factual and legal developments—that the *Christiansburg* Court described as not justifying an award to defendants of fees and costs. As the Supreme Court explained: "[T]he course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Id.* at 422. That Metacon ultimately prevailed does not mean or suggest that Plaintiffs did not reasonably bring suit or litigate their claims. *See id.* at 421 ("the term 'meritless' is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case").

Additional factors counsel against awarding fees and costs to Metacon in this case. As noted above, this case presented a number of complex and contested legal questions that were—and some that remain—unresolved. On appeal, the Second Circuit invited the United States to appear as *amicus curiae* to provide the EPA's position on the abandonment issue. Two additional set of *amici* appeared before the Second Circuit to address legal questions raised by *Rapanos*. The National Association of Home Builders, the American Farm Bureau Federation, and the Chamber of Commerce of the United States of America filed an amicus brief in support of Metacon, in which they argued that under *Rapanos* the CWA did not reach Metacon's wetlands. *See* 2007 WL 7073659. The National Wildlife Federation and a number of other organizations argued the opposite—that *Rapanos* did not limit the CWA's

12

reach in this case, and even if it did, Metacon's wetlands fell within the CWA's jurisdiction. *See* 2007 WL 7073660. The Second Circuit did not resolve the issue. *See Cordiano*, 575 F.3d at 215 ("we need not decide whether wetlands on the Metacon site are jurisdictional wetlands pursuant to the *Rapanos* test"). At the least, the Second Circuit's *amicus* invitation to the United States regarding the RCRA abandonment issue and the opposing *amici* addressing the *Rapanos* issue show that the legal bases for the Court's dismissal of Plaintiffs' claims were subject to dispute, and that "reasonable minds could differ as to the merits" of Plaintiffs' ultimately unsuccessful action. *See J.B. Hunt Transport, Inc.*, 75 F. App'x at 854.

Moreover, two months *after* Plaintiffs filed suit, "Metacon adopted an 'Environmental Stewardship Plan'" that it claimed implements best practices recommended by the EPA in a 2001 manual—"Best Management Practices for Lead at Outdoor Shooting Ranges"—that this Court and the Second Circuit cited in holding that lead shot is not "abandoned" when fired at a shooting range, and therefore is not hazardous waste subject to the relevant RCRA permitting requirements. *See Cordiano*, 575 F.3d at 208; *Metacon II* at *2, *8–*9. "The plan calls for annual lead raking, sifting and clean-up, with the lead to be recycled. It also calls for biannual pH testing of surface and ground water and soil, to ensure that these measures are within the non-acidic range that slows the breakdown of lead." *Metacon II* at *2. This plan, if applied as described, would result in Metacon's voluntarily performing actions similar to one of the forms of injunctive relief Plaintiffs had sought, that is, this Court's "[o]rder[ing] the Defendant[] to clean up and properly dispose of

13

accumulated lead at the Site and on adjacent property." (Am. Compl. at Part VI at ¶ 8.) Although Metacon's adoption of its Environmental Stewardship Plan does not show Plaintiffs to be prevailing parties, *see Buckhannon Board & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001) (rejecting proposition that a party who obtains a favorable private settlement may be awarded attorney's fees); *see also Mr. L. v. Sloan*, 449 F.3d 405, 407 & n.1 (2d Cir. 2006) (holding *Buckhannon* applicable to prevailing defendants), it does bolster the Court's conclusion that Plaintiffs' claims were not frivolous, unreasonable, or without foundation.

Because Plaintiffs' claims were not frivolous, unreasonable, or without foundation at the outset and were not unreasonably litigated thereafter, Defendant Metacon is not entitled to fees and costs under RCRA or the CWA.

C.      Need for a Hearing

Metacon also "request[s] an evidentiary hearing . . . if needed to assist the [C]ourt in determining the propriety of a fee award and the amount of such an award." (Def.'s Mem. Supp. at 16.) Because the record shows clearly that Metacon is not entitled to any fees or costs under RCRA or the CWA, there is no need to hold any evidentiary hearing. This request is therefore moot, and will be denied as such.

IV.     Conclusion

For the reasons stated above, Metacon's Motions for Attorney and Expert Witness Fees and Scheduling Order for Evidentiary Hearing [Doc. ## 74, 78] are DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of March, 2010.